IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| TYLER B. IRONS, | ) | |
| | ) | CASE NO. BK15-40876 |
| Debtor(s). | ) | A15-4051 |
| RONALD P. HASLEY and VICKI A. HASLEY, d/b/a SWITE ENTERPRISE, | ) ) | |
| | ) | |
| Plaintiffs, | ) | CHAPTER 7 |
| | ) | |
| vs. | ) | |
| | ) | |
| TYLER B. IRONS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This matter is before the court on the plaintiffs' motion for summary judgment (Fil. No. 23) and the debtor's resistance (Fil. No. 26). Robert B. Creager represents the debtor, and John C. Hahn represents the plaintiffs. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motion was taken under advisement without oral arguments.

The motion is denied.

This case concerns a judgment debt of nearly $190,000 which the creditors to whom the debt is owed seek to have excepted from discharge under 11 U.S.C. §§ 523(a)(2)(a) and (a)(4). The matter was originally scheduled for trial in July 2016, but after a status conference with the parties, the court continued the trial and gave the plaintiffs time to file a summary judgment motion. That motion is now ready for decision.

According to the complaint, the debtor was a member, employee, and/or agent of J & R Motors, LLC, in Lincoln, Nebraska. J & R was in the business of selling vehicles and providing financing for those vehicles to people who lacked good credit. In 2011, the plaintiffs loaned J & R $165,000, for which J & R assigned certain accounts receivable to the plaintiffs as security. J & R did not repay the loan when due, nor did it provide an accounting of the receipts to the plaintiffs. The plaintiffs filed a lawsuit in Lancaster County District Court against J & R, Jack Irons, and Tyler Irons alleging breach of contract, unjust enrichment, fraudulent or negligent misrepresentation, and fraudulent transfer. The only allegations against the debtor concerned fraudulent transfers and the use of the business entity to commit fraud. After the defendants failed to respond to requests for admission, the district court granted summary judgment in favor of the plaintiffs on the claim that the defendants breached the terms of the loan agreement and awarded damages of $165,000 together

with accrued interest in the amount of $24,141.25 plus court costs of $119.18 for a total of $189,260.43 plus post-judgment interest at a rate of 2.137% per annum. That judgment was filed on April 22, 2015, and the debtor filed his Chapter 7 petition on May 28, 2015. The plaintiffs now move for summary judgment in this proceeding on the basis of the state court file.

The following facts are uncontroverted:

1.	Tyler B. Irons, the debtor, is an individual residing in Lincoln, Lancaster County, Nebraska.

2.	The plaintiffs, Ronald P. Hasley and Vicki A. Hasley, d/b/a Swite Enterprise, reside in Beatrice, Gage County, Nebraska.

3.	On May 23, 2014, the plaintiffs filed a complaint in the District Court of Lancaster County against Tyler B. Irons, Jack Irons, and J & R Motors, LLC.

4.	On April 22, 2015, an order was entered in the District Court of Lancaster County granting summary judgment in favor of the plaintiffs and against the debtor and his co-defendants awarding the plaintiffs judgment in the amount of $189,260.43 plus post-judgment interest at a rate of 2.137%.

5.	The debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on May 28, 2015.

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). On a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "Although the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1078–79 (8th Cir. 2008). *See also Celotex Corp.*, 477 U.S. at 324 (where the nonmoving party "will bear the burden of proof at trial on a dispositive issue," the nonmoving party bears the burden of production under Rule 56 to "designate specific facts showing that there is a genuine issue for trial").

Summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal procedural rules as a whole, which are designed "to secure the just, speedy and

inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1); Fed. R. Bankr. P. 1001.

A state court action to establish a debt is separate from a determination of the dischargeability of that debt in bankruptcy. *Tatge v. Tatge (In re Tatge)*, 212 B.R. 604, 609 (B.A.P. 8th Cir. 1997). The bankruptcy court has exclusive jurisdiction to determine whether debts for a debtor's fiduciary or non-fiduciary fraud, embezzlement, larceny, or willful and malicious injury are non-dischargeable. 11 U.S.C. § 523(c); *Zio Johnos, Inc. v. Ziadeh (In re Ziadeh)*, 276 B.R. 614, 619 (Bankr. N.D. Iowa 2002). Therefore, the court must review the state court judgment to see whether it establishes the elements of a prima facie case under § 523. *Hobson Mould Works, Inc. v. Madsen (In re Madsen)*, 195 F.3d 988, 989-90 (8th Cir. 1999).

When determining whether collateral estoppel arises from a prior state court judgment, federal courts apply the substantive law of the forum state in whose courts the prior judgment was entered. *Osborne v. Stage (In re Stage)*, 321 B.R. 486, 492 (B.A.P. 8th Cir. 2005). In Nebraska, the doctrine of collateral estoppel, also known as issue preclusion, holds that an issue of ultimate fact that was determined by a valid and final judgment cannot be litigated again between the same parties or their privies in any future lawsuit. *Stevenson v. Wright*, 733 N.W.2d 559, 565-66 (Neb. 2007). Collateral estoppel is applicable where (1) an identical issue was decided in a prior action, (2) the prior action resulted in a judgment on the merits which was final, (3) the party against whom the doctrine is to be applied was a party or was in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action. *Id.* at 566. The party asserting preclusion bears the burden of proving each of the elements. *Johnson v. Miera (In re Miera)*, 926 F.2d 741, 743 (8th Cir. 1991). When making the determination that an issue was actually litigated and was necessary to the decision in the prior proceeding, the court should examine the entire record of the earlier case. *Id.*

Absent evidence of fraud, debts arising from contract breaches are not excepted from discharge in bankruptcy. *Lindau v. Nelson (In re Nelson)*, 357 B.R. 508, 514 (B.A.P. 8th Cir. 2006); *Integrated Practice Mgmt., Inc. v. Olson (In re Olson)*, 325 B.R. 791, 801 (Bankr. N.D. Iowa 2005). Here, the plaintiffs assert the judgment debt is non-dischargeable under § 523(a)(4) because it is a debt for fraud or defalcation while acting in a fiduciary capacity, and under § 523(a)(2)(A) because the debt is for money obtained by false pretenses, a representation, or actual fraud.

To prevail on a § 523(a)(4) cause of action, a plaintiff must establish by a preponderance of the evidence that a fiduciary relationship existed between the parties and that the defendant committed fraud or defalcation in the course of that fiduciary relationship. *Jafarpour v. Shahrokhi (In re Shahrokhi)*, 266 B.R. 702, 707 (B.A.P. 8th Cir. 2001).

Whether a relationship is a fiduciary relationship within the meaning of § 523(a)(4) is a question of federal law. *Arvest Mortg. Co. v. Nail (In re Nail)*, 680 F.3d 1036, 1039 (8th Cir. 2012) (citing *Tudor Oaks Ltd. P'ship v. Cochrane (In re Cochrane)*, 124 F.3d 978, 984 (8th Cir. 1997)). "Acting in a fiduciary capacity" is limited in application to technical or express trusts, not to trusts that may be imposed because of the alleged act of wrongdoing from which the underlying

indebtedness arose. *See Hunter v. Philpott*, 373 F.3d 873 (8th Cir. 2004) ("fiduciary" used in a strict and narrow sense in § 523(a)(4), and fiduciary status must pre-date the debt); *Barclays Am./Bus. Credit, Inc. v. Long (In re Long)*, 774 F.2d 875, 878-79 (8th Cir. 1985) (holding that for purposes of § 523(a)(4) fraud or defalcation exception, fiduciary capacity must arise from express trust, not constructive trust or mere contractual relationship). The substance of a transaction, rather than the labels assigned by the parties, determines whether there is a fiduciary relationship for bankruptcy purposes. *Nail*, 680 F.3d at 1040 (quoting *Long*, 774 F.2d at 878-79).

In this case, the parties' written agreement assigning the accounts receivable to the plaintiffs states "All moneys collected or received by the undersigned in respect of the Assigned Accounts shall be received as trustee for the Assignee and shall be forthwith paid to the Assignee." Accounts Receivable, Specific Assignment ¶ 4 (attached to Fil. No. 23). The correspondence between the parties as they worked on trying to get the loan repaid indicates the debtor and J & R were depositing payments in an escrow account for the plaintiffs each week, pursuant to that paragraph in the agreement. The substance of this arrangement signals an actual fiduciary relationship, rather than simply a contractual relationship.

On the definition of the term "defalcation," the United States Supreme Court settled divergent case law and has interpreted "defalcation" to require intentional wrongdoing. *Bullock v. BankChampaign, N.A.*, ___ U.S. ___, 133 S. Ct. 1754 (2013).

> For a defalcation to occur within the scope of Section 523(a)(4), "a culpable state of mind" is required wherein the debtor has "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Bullock v. BankChampaign, N.A.*, ___ U.S. ___, 133 S. Ct. 1754, 1756, 185 L. Ed. 2d 922 (2013). "[W]here the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, [defalcation] requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that criminal law often treats as the equivalent." *Id.* at 1759. "Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary 'consciously disregards' (or is willfully blind to) 'a substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty." *Id.* [citation omitted]. Exceptions to discharge under Section 523(a)(4) are construed narrowly and therefore the burden lies with the creditor opposing discharge. *In re Thompson*, 686 F.3d. at 944 (citing *In re Nail*, 680 F.3d at 1039).

*Fleming Mfg. Co. v. Keogh (In re Keogh)*, 509 B.R. 915, 934 (Bankr. E.D. Mo. 2014).

Here, the plaintiffs' evidence, in the form of the plaintiffs' unresponded-to requests for admission in the state court case, indicates the debtor knew he was supposed to hold certain receipts in trust and pay them to the plaintiffs, but did not do so. Under the Supreme Court's defalcation definition, this is sufficient to constitute defalcation by a fiduciary. However, for reasons stated below, this statement does not constitute a finding as to this element of § 523(a)(4).

The *Bullock* decision makes clear that defalcation and fraud are not mutually exclusive, and defalcation may cover non-fraudulent breaches of fiduciary duty. 133 S. Ct. at 1760. Here, the plaintiffs argue that the debtor's conduct was not only a defalcation, but was fraudulent as well. Likewise, the plaintiffs claim the debt is non-dischargeable under § 523(a)(2)(A) because the funds were obtained fraudulently.

Section 523(a)(2)(A) of the Bankruptcy Code prohibits the discharge of a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition[.]" False pretenses, false representations, and actual fraud are three separate elements.

"A 'false pretense' involves implied misrepresentation or conduct intended to create and foster a false impression." *Merchants Nat'l Bank v. Moen (In re Moen)*, 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999) (quoting *In re Guy*, 101 B.R. 961, 978 (Bankr. N.D. Ind. 1988)). "[W]hen the circumstances imply a particular set of facts, and one party knows the facts to be otherwise, that party may have a duty to correct what would otherwise be a false impression. This is the basis of the 'false pretenses' provision of Section 523(a)(2)(A)." *Moen* at 791 (quoting *In re Malcolm*, 145 B.R. 259, 263 (Bankr. N.D. Ill. 1992)).

False representations may be by omission or commission. *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1288 (8th Cir. 1987), *abrogated on other grounds*, *Grogan v. Garner*, 498 U.S. 279 (1991). A "misrepresentation" is "not only words spoken or written but also any other conduct that amounts to an assertion not in accordance with the truth." *Moen* at 791 (quoting *LA Capitol Fed. Credit Union v. Melancon (In re Melancon)*, 223 B.R. 300, 308-09 (Bankr. M.D. La. 1998)). A debtor's silence regarding a material fact may constitute a false representation actionable under § 523(a)(2)(A). *Moen* at 791.

"Actual fraud" was recently defined by the United States Supreme Court in *Husky Int'l Elec., Inc. v. Ritz*, ___ U.S. ___, 136 S. Ct. 1581 (2016), to encompass anything that counts as fraud and is done with wrongful intent, including fraudulent conveyances, which do not require a misrepresentation from a debtor to a creditor.

> "Actual fraud" has two parts: actual and fraud. The word "actual" has a simple meaning in the context of common-law fraud: It denotes any fraud that "involv[es] moral turpitude or intentional wrong." *Neal v. Clark*, 95 U.S. 704, 709, 24 L. Ed. 586 (1878). "Actual" fraud stands in contrast to "implied" fraud or fraud "in law," which describe acts of deception that "may exist without the imputation of bad faith or immorality." *Ibid.* Thus, anything that counts as "fraud" and is done with wrongful intent is "actual fraud."

*Id.* at 1586.

Here, the plaintiffs are alleging that the debtor used false pretenses and actual fraud to obtain the loan, leading them on with assurances regarding the rate of return on their money and repayment of the loan with interest within four months as well as concealing assets and generally hindering the collection of the debt.

The evidence before the court does not contain evidence of false pretenses in inducing the plaintiffs to make the loan. The debtor may have made certain representations to the plaintiffs about how well the business was doing and about the intended repayment terms, but there is no indication those representations were false at the time they were made.

However, the evidence may support the plaintiffs' assertion that the debtor transferred cash to avoid repaying the loan. The submitted bank records indicate that a number of transfers were made to or for the benefit of the debtor, to his family members, to other businesses owned by the debtor or his family members, and to creditors whose debts were incurred after this loan. This is precisely the sort of conduct the Supreme Court identified as actual fraud:

> Fraudulent conveyances typically involve "a transfer to a close relative, a secret transfer, a transfer of title without transfer of possession, or grossly inadequate consideration." *BFP,* 511 U.S., at 540–541, 114 S. Ct. 1757 (citing *Twyne's Case,* 3 Co. Rep. 80b, 76 Eng. Rep. 809 (K.B. 1601)); O. Bump, *Fraudulent Conveyances: A Treatise Upon Conveyances Made by Debtors To Defraud Creditors* 31-60 (3d ed. 1882). In such cases, the fraudulent conduct is not in dishonestly inducing a creditor to extend a debt. It is in the acts of concealment and hindrance.

*Husky Int'l* at 1587.

The state court judgment was entered against the debtor and two other defendants, in large part because the defendants did not answer discovery or respond in any way to the plaintiffs' motion for summary judgment. The debtor has included a contingent and unliquidated claim for legal malpractice against his state court attorney among the assets listed in his bankruptcy schedules.

The only evidence submitted by the debtor on this motion is his own declaration explaining that he was unaware of the state court judgment until the plaintiffs commenced attempts to collect it, and that he did not engage "in any act of fraud, deceit or misrepresentation" against the plaintiffs or breach any fiduciary duty to them, or borrow any money from them on his own behalf or on behalf of J & R. This is a broad denial of all allegations in one sweeping paragraph, and not at all what is contemplated in Local Rule 7056-1(C)(2), but because non-dischargeability of this sizable judgment debt is a serious matter, and because the debtor appears to have been deprived of the opportunity to defend the claims against him in state court, there are genuine issues of material fact and the matter will be set for trial.

IT IS ORDERED: The plaintiffs' motion for summary judgment (Fil. No. 23) is denied. The Clerk shall schedule a one-day trial in Lincoln.

DATED: September 16, 2016.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
Robert B. Creager
*John C. Hahn
U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.